The Board's decisions are problematic with error for three primary reasons. I'll touch on those and I'll go into those in some detail. First, the Board denied Netlist its procedural rights by basing its decision for Ground 3 on a rejected theory that was raised for never instituting Ground 2. Second, the Board erred by basing its holding on collateral estoppel from the earlier 970-971 IPR decisions for the limitations of the independent claims. But those earlier decisions were based on a single device block, single sequencer configuration that is incompatible with placement of Averbooz's memory interfaces in separate ICs as required by petitioner's theory for the dependent claims. So what, in your view, it seems to me that these procedural aspects really pervade both of these cases. What, in your view, should have been different procedurally? Okay. Your Honor, procedurally, let's tackle that issue. The Hynix petitioner was obligated to set forth the complete basis for its Ground 3 theory in its petition. And it clearly did not do that here. Ground 3 does not build upon Ground 2 as the Board reason that sometimes can be the case. Here, Ground 3 was distinct from and inconsistent with Ground 2. Ground 3 placed both the memory interfaces and the sequencer in the same single IC, whereas Ground 2 placed each of these components in separate ICs. Now, the Board treated these as distinct contentions akin to allegations of a complaint. But this is, by statute, an agency trial on the merits. And there was a submission of evidence that this far transcends a contention. And the submission here was an admission from Ground 3, placing the sequencer and the memory interface together in the same IC, is an admission that refutes any inconsistent allegation from Ground 2. Now, the statutory framework here is that the patent owner shouldn't have to engage in guesswork about how some inconsistent position from Ground 2 could be understood to apply for Ground 3. So what's the standard of review that we apply to the Board's conclusions? The standard of review is de novo. And, Your Honor, you'll find that in NRA Magnum Oil Tools and also in this Court's decision of two weeks ago, NRA IPR licensing case number 2018-1805. And I think that's informative here because in that decision, well, first of all, it cites the Magnum Oil Tool case. And this Court has a line of cases that address these procedural due process concerns. And Magnum Oil stands for the proposition that the Board must base its decision on arguments that were advanced by a party and to which the opposing party was given a chance to respond. Now, NRA IPR licensing cited that very language and also cited the Board regulations and said, an issue upon which the Board does not institute review is not part of the ensuing inter-parties review proceeding. So the Ground 2 issue of placing the sequencer in its own separate IC was an issue that was not part of the proceeding because it was never instituted. And so that highlights the procedural error in this case. But the theory is that those issues were adequately explored anyway. Yeah, well, and I would suggest NRA IPR licensing says you can't do it. It was never instituted. And so the patent owner wasn't even given an opportunity to respond to that. The patent owner is only supposed to respond to instituted issues. And I think the Court picked up on that particular argument and procedural protection that's required here. But I would submit even beyond that, if you set that aside, the Board reasoned that Ground 3 builds upon Ground 2, and that's just not the case here. Ground 3 is inconsistent with Ground 2. So we, therefore, submit there is a procedural error here and a violation of netless procedural and due process rights for that reason. They can't come in and be expected to challenge grounds that were raised only for Ground 2 when Ground 2 was never instituted. And IPR licensing supports and highlights that problem with that. And this takes me to Justice Alito's statement and his opinion in Quozo Speed, where he said that the petition fails to state that the challenge with particularity, the patent owner is left to shoot in the dark. The potential for unfairness is obvious. And that's what we have here. You can't shoot in the dark. The patent owner needs to have a clear statement, as required by statute, with particularity of the full grounds for Ground 3 in the petition. And in this case, it just wasn't done that way. Now it's telling that, well, if I move on to another issue, unless you have some further questions. Are we going to move on to the merits? Yes. With respect to the Board's reliance on collateral estoppel, I'll come to that if I have time permitting, but at the end of the day here, the Board's decision is erroneous in law because it rests on hindsight, legal reasoning, and incorrect legal analysis. The combination of Averbooz and CERN does not place each of Averbooz's memory interfaces, each in their own separate IC apart from one another, or apart from their single common sequencer control module. You have a single device block with one sequencer as a control module. But the Board dealt with that, right? I mean, at least there was an expert by the other side that said that it would have been obvious to separate all the components onto a single chip. And the Board relied on that expert testimony. So what do we do with that under substantial evidence review? First, the Board committed error in that that testimony is not supported by CERN. The Board looked to the structures of CERN. First, it said, we've already recognized underground two. Averbooz doesn't place these separate self-test circuitry in their own individual components. We need to look to the structures of CERN. But when you look to the structures of CERN, all of the self-test circuitry is placed in the same IC buffer. That's Averbooz's sequencer and memory interfaces would be placed in the same IC buffer. So there's no teaching of separating address and control or data and placing them in separate IC buffers. CERN puts all of that in the same buffer. There's no basis there. This is pure hindsight to carve those out. And the Board reasoned, it's reasoning stopped short because it just said, well, CERN teaches separate IC buffers. But if you look at it in substance, CERN teaches that all of the self-test circuitry goes into that IC buffer. And petitioner's theory relies on carving out portions of that self-test circuitry and placing it all in their own separate IC. CERN just doesn't teach that at all. CERN doesn't teach the distribution of Averbooz's memory interfaces, therefore, in separate ICs apart from one another or apart from their single common sequencer. And you can find this, the CERN's teaching of self-test circuitry in Block 1883 and Figure 18 of Averbooz. And also, I'm sorry, Figure 18 of CERN and also Figure 1 of CERN. And I think we briefed this in detail that at the end of the day, CERN places all of the self-test circuitry in a single IC, whereas the theory that petitioner raised is to carve out that self-test circuitry and put it in distinct ICs. And CERN doesn't distinguish or teach the separation of address or control handling from data handling. It's all lumped together. And that's inconsistent with the Board's finding. The Board's reasoning is legally erroneous and the findings lack substantial evidentiary support. So if I have time, I would like to touch on, there is a separate basis of error. We pointed out that the Board relied on collateral estoppel with respect to the earlier 979-71 decisions for the limitations of the independent claims. But the configuration there is incompatible with carving out Averbooz's memory interfaces in separate ICs as required by the dependent claims. It had a single, in that case, the 970 case, a single device block with a single sequencer. So what do you have? You have to carve out that. They're all embedded in the same IC. There must be some motivation to carve that out. Hynex treated this and the Board treated this as a one-to-many issue of claim construction. But as we submitted in our reply, that went away. When the Board went to collateral estoppel, we're dealing with a single device block and a single sequencer. So the issue of a one-to-many claim construction went away. There's no possibility of aggregating sequencers as a control module across multiple device blocks. That issue went away, but there is a one-to-many issue of obviousness that remained, and that is in a single device block with a single sequencer paired with their memory interfaces, whether it would be obvious to carve out those memory interfaces, those plural memory interfaces, apart from their single common sequencer. And CERN just doesn't teach that, and the Board didn't even account for that, and Hynex submits that it's irrelevant. We submit that it's not. At the end of the day, you need to look to the structures of CERN, and CERN teaches that all the self-test circuitry would be placed in the same IC. What about paragraph 53? Of CERN? Your Honor, if you want to tell me what your point is with respect to 53. It expressly says, in an embodiment, each memory device and buffer device are housed in separate packages. Why isn't that a disclosure that COSA could rely on to know separate components? Yeah, I believe what you're referring to is a not for test mode. And what was relied upon, what is at issue here, is the test mode operation. And if you look at the test mode operation, you can turn to figure 18, that's redundancy and repair circuit 1883. So, in the buffer device, you have all the address and control and all the data handling in the same IC. Figure 18, also on figure 1, you can see that the control and data lines being operated with respect to the same IC. So, we've got to go to CERN's teaching with respect to test mode, and on test mode, it places all the test circuitry in the same IC. There are no further questions? Thank you, Your Honor. May it please the Court. At page 217 of the joint appendix, the combination of Averbooz and CERN, analyzed in ground three for the dependent claims at issue here, is defined. On that page, it says that CERN discloses a plurality of circuits for handling data comprising physically separate components. And in the next paragraph, it says, it would have been obvious to include that separate components configuration of CERN into the system of Averbooz. That is the prior art combination that we based our ground three analysis on for the dependent claims. Claim two was the basic one, and that was where it is. It says nothing about where the sequencers are placed. It says nothing about where the claimed control module is placed. And the reason it says nothing about those things is because the claims don't say anything about where the control module is placed. The dependent claims don't even mention the control module, and even the independent claim doesn't say where the control module is placed. It's irrelevant to these issues, and our proposed combination didn't treat that. That combination, defined at page 217 of the joint appendix, was the basis for the board's finding of unpatentability at the appendix pages 34 and 35. Was there any request for amendment in this area? Do you remember? Amendment of the claims? There was no motion to amend, Your Honor. No, there was not. The analysis of the board, adopting our analysis in ground three, also said nothing about where the sequencer was or the control module. In fact, the board found that our analysis in ground three is agnostic as to whether the sequencers are placed in the same packages as the memory interfaces. It could be either way, and that's absolutely correct, and that's a finding that I think is not an abuse of discretion. Now, that finding was clearly based on substantial evidence, first of all. The underlying facts were. The prior art, there's no question that Averbooz and CERN were prior art. We supported the justifications for that combination with testimony from our expert and from citation to CERN and three other prior art references, supporting the motivations to combine we put forth. So it was clearly supported. Now, the board also found that our ground three analysis was not dependent on and, in fact, applied to all three mappings we used in our independent claim.  The portion of the petition that describes our analysis there never says anything about mappings. It doesn't use the word mapping. So it's clear that the board's conclusion that our analysis was not limited to mapping two was not clearly erroneous. In fact, it was absolutely correct. The board found, moreover, that Netlist never responded to our analysis as it applied to mapping one, which was the same mapping used in the prior case and formed the basis of the collateral estoppel finding. That finding that they didn't respond was also not an abuse of discretion or clearly erroneous because their entire patent owner response relies on the mapping two analysis where the address generation circuitry is the claim control module. It didn't have anything to do with mapping one. So what that means, Your Honor, is that the obviousness conclusions of the board is premised on substantial evidence for the underlying factual questions and unrebutted reasoning for the ultimate legal question of obviousness. Under that, it seems to me that the court can do nothing but affirm. There's just nothing they said that addressed the actual reasoning that found these claims invalid for obviousness. Your Honor, unless you have some questions for me, I will cede the rest of my time. Thank you. Your Honor, we submit, for the reasons I stated earlier, that it's not irrelevant where the sequence is placed in the obviousness issue. The issue is one of obviousness where a person with skill in the arts looking at Averbouge and CERN and all of these components, the sequencer and the memory interfaces, are on the same embedded integrated circuit. So it's an issue of whether it would be obvious to carve out the memory interfaces separate and apart from their single common sequencer. And that is an issue that CERN teaches. These devices would, one would put all the self-test circuitry in the same IC. And that's just what CERN does on paragraph 97 and on figure 18, for example. And, Your Honor, again, your reference, the question about paragraph 53 of CERN deals with normal mode, not test mode. And it's the test mode that we're looking at to Averbouge for its teachings. And all of the teachings are to place all of the, the teachings of Averbouge, are to place all of the self-test circuitry in the same single IC. So neither Averbouge does, Averbouge admittedly doesn't teach breaking apart the various components of its embedded circuit, the sequencer and memory interfaces. And now we know CERN, of course, does not teach it because it puts all these components in the same IC. Now, responding to counsel's arguments about waiver, we briefed and cited multiple places in our POR, patent order response, in our argument and elsewhere. I think there are six different sites from the hearing that we put in our brief from the hearing transcript. And we said ad nauseum over and over that CERN doesn't teach separation of the address unit from the data unit. And the address unit could be the address generation unit or the sequencer. But for mapping one at issue here, it's the sequencer if you're playing, if that's the read. And we encompass that in all of our arguments. And just to pick one of them, it says there's just no teaching for separating whatever you want to call an address unit, meaning the sequencer or the address generation unit. There's no teaching for separating address generation from data or control from CERN. And so there are six sites from the transcript at the oral hearing, 646, appendix 646, 658, 659, 669, 670, 674, and 676. We also showed this graphically at appendix 3378 where the sequencer, according to their theory, would be placed directly into the sequencer and the memory interfaces would be placed directly into the CERN buffer. We depicted this. And we showed that you don't, this would not pull out Averbooz's memory interfaces and place them in separate integrated circuits. So it wasn't waived. It was argued, was depicted visually, was argued in the patent owner response to sites in our brief, and it was argued over six times at the oral hearing. And frankly, it's just as inexplicable that that was looked over. But setting that aside, the teachings are beyond debate, frankly, that CERN places all the self-test circuitry in the same single integrated circuit. And therefore, it doesn't teach separation of the memory interfaces from their single common sequencer. Thank you, Your Honor. Thank you. We thank both sides, and the case is submitted.